2011-32-31. Mr. Devine, whenever you're ready. May it please the court, my name is Tom Devine and co-counsel for Mr. McLean. On July 26, 2003, Mr. Federal Air Marshal Robert McLean and all the other air marshals in the country received emergency training to thwart a confirmed, more ambitious 9-11 rerun that would be targeting long-distance flights which could reach targets in Europe and numerous United States cities. The threat was confirmed by the FBI, DHS itself, the Department of State, and even the Saudi government. A few days later, however, they all received unrestricted text messages to their associated hotel reservations, which also meant canceling the assignments. The communications to cancel the assignments were so uncontrolled that Mr. McLean thought it was like broadcasting abandon of their mission with a bullhorn in a public plaza. He protested to his supervisor, making three calls to the Office of Inspector General and talking to representatives there, and he anonymously sought to reach Congress through the media when his local supervisors and IG agents said nothing could be accomplished other than to earn retaliation against himself. They agreed that his points were well taken, but they said he was just beating his head against the wall. He'd only hurt himself. Where's that in the record? Yes, sir? Where's that in the record, the communication back to him? That is Mr. McLean's undisputed testimony, Your Honor. There was an immediate national political firestorm after these disclosures with threatened congressional hearings, protests from 11 members of Congress within 24 hours. Wait, so what was the nature of the protests? His complaint was what, exactly? His complaint was that the Federal Air Marshal Service would be removing scheduled coverage from the planes that were targeted by the terrorists for hijacking. That wasn't his complaint. His disclosure, as I understand it, was, guess what, America, there's going to be no marshals on any of the flights to Las Vegas. How is that a pro-safety disclosure? All he has now done is given the terrorists the exact flight to jump on board because nobody's on it. Your Honor, because he made the disclosure in advance, he was giving the government time to correct what within 24 hours it conceded was a mistake. While there's any risk in addressing, dealing with an emergency situation, that's inherent, his actions gave the government an opportunity to restore coverage. It didn't deny that the coverage was needed. That assumes that he has control over dissemination of the information. He told a reporter in a very short span of time, but he had no basis for thinking that he could control when the reporter disseminated this information and when it got out to the public. The reporter could have, I mean, something else could have happened that day, he couldn't have gotten approval, it could have then been disseminated after the fact. He made the disclosure five days before the fact after confirming with the reporter that he had access to the relevant offices in Congress to get the information to them. The reporter's judgment was well taken. In less than 24 hours, they responded. So his theory, the theory of him protecting the public safety would be that he's disclosing it to someone, that person is going to disseminate the information and it's going to create such a firestorm that the government is going to have to change its plans before they're even implemented? Is that really a reasonable way to proceed? Mr. McClain was knocking on every door that was available. He started within the chain of command, he went to the Office of Inspector General, when the agency said... No, but I'm asking you about whether or not it was reasonable for him to believe that this information would have created such a firestorm in such a short amount of time that the planned discontinuation of Marshalls would have been stopped before it took effect. Was that reasonable under all the circumstances? Your Honor, I believe it was for two reasons. One is the seasoned reporter told him that he could deliver on getting the information to the right congressional offices. Number one, that's fine that he could disseminate the information in a proper time, but the notion that he could necessarily reasonably believe that a congressman, it would have enough of an impact so that they could get to the FAA and this plan could actually be stopped in the interim? Your Honor, I believe that Mr. McClain's belief... Wait a minute. Wasn't the proof of that, that members of Congress didn't respond on an instant basis? In fact, they did, and that's why I believe that Mr. McClain's judgment was reasonable. That this wasn't a shot in the dark, but this had a realistic chance of making a difference by exercising the freedom to warn of what could be an imminent disastrous mistake by the government. I want to know, though, you say it's in the record. I'd like to know where in the record, for example, is the statement made that the only thing that will happen is you'll be retaliated against? That was Mr. McClain's testimony, Your Honor. Of course, we'd be glad to submit the briefing. We have provided citations in our earlier submissions. Well, find it when you're sitting down and let me know. Yes, sir. Wasn't it also the case that the government had a basis for making this decision, because there were limited resources and resources were needed elsewhere? In advance, we can only say that there's a reasonable basis to make a decision, but the government, within 24 hours, announced that the text message had been a mistake and restored the coverage. So, Mr. McClain's burden wasn't to necessarily be right, but to have a reasonable belief that public health and safety was being threatened. And, in fact, the government did not disagree with him in hindsight in terms of its actions. In terms of its personnel actions, of course, it did. It fired him. Can I turn you to one of the issues here? I know you've raised a lot of issues, a lot One that seems to give me the greatest pause, at least, is the statutory provision in the Whistleblower Act that says, that requires that the disclosure be specifically prohibited by law. And your argument being, I understand, that there was not a specific statutory prohibition, that there is a prohibition against disclosure, but what? Is your argument that it's not specific enough? Yes, Your Honor, and we think that that's an extremely difficult conclusion to rebut. The Ninth Circuit, in making a ruling that the information was sensitive security information, sent it to the board for review under the Whistleblower Protection Act because, quote, the lack of clarity meant that he could have made a good faith mistake about its status. A 2004 report of the Congressional Research Service specifically attacked SSI, sensitive security information regulations, for their lack of specificity. And that's even more than the statute. That's the regulations that implemented the statute. Yeah, but that's not your argument. That's not the issue before us. I thought the issue, well, tell me if I'm right. I thought the issue before us was that, assuming the regulations are specific enough, they should contain specificity that was not existing in the statute, and therefore that's not a proper exclusion under the text of the Whistleblower Act. Our contention is that this provision of the Whistleblower Protection Act was violated in two areas. Number one, the specificity must be in the statute. There's no provision in law to delegate that specificity to an agency. But number two, the agency failed to provide the specificity. It's not just the Ninth Circuit and the Congressional Research Service. It's Executive Order 13556, issued in 2010, to correct the problem of lack of specificity. And it's stated in Section 1 that this inefficient, confusing patchwork has resulted in inconsistent marking and safeguarding of documents, led to unclear or unnecessarily restrictive dissemination policies, and created impediments to authorized information sharing. This was about sensitive security information regulations and those of other agencies with similar rules. We don't think that it's possible to meet the standard of having a specific prohibition which provides the employee with clear notice of what the line is between protected and unprotected. They removed him here because he disclosed information regarding the number of marshals or the existence of marshals on planes, right? They removed him because he disclosed a message to cancel all air marshal coverage. So what would the statute have had to have said in order to withstand scrutiny under the Whistleblower Act? Well, according to the law from 1978 to 2009, the statute would have either had to have provided no discretion on whether you can disclose or not disclose, or provide specific criteria that would be... Give me an example of what the statute would have had to say in order for you not to be here arguing that it's not specific enough. Yes, ma'am. Both Congress in 1978 and the Congressional Amicus this last year spotlighted the Trade Secrets Act as one that would meet those standards because it provided specific criteria that could be applied by a knowledgeable employee. Okay, so in this case, what would the statute have had to have said? It would have had to have said for this particular circumstance that it's prohibited to disclose the absence or existence of air marshal coverage, period. That way employees would know that this topic was forbidden, that they couldn't go into it. The statute merely said, however, that it's forbidden to disclose information which the Assistant Secretary thinks could undermine aviation safety. The difficulty I'm having is because secretaries and administrators have a lot more flexibility than congressional committees. Usually when Congress attacks a problem, it does it generally, it does it at one time. It's hard to go back to that. And we're dealing with the post-9-11 era where nobody was quite sure what kind of attacks we could expect. So it seems to me, leaving aside the whole whistleblower schtick, it seems to me quite reasonable for Congress to say, we don't know exactly what we're going to anticipate as being the threat. And so we're going to leave it to the person on the ground who knows what's going on and has some flexibility to find exactly the parameters of what ought to be disclosed. That seems to me a very reasonable way for Congress to proceed. And what you're telling us is that because of the whistleblower provision, Congress is going to have to do stuff that it may not be in a position to do, lack of expertise and so forth, lack of flexibility, but it has to in order to be able to protect that information. Am I misleading you? Your Honor, in the abstract, of course it's good to have flexibility for emergency contacts. No one would deny that. However, in applying that concern to this situation, if Mr. McClain had kept silent, the air marshals wouldn't have been on those planes and the country would have been defenseless against a more ambitious 9-11 attack. But I'm talking about the context. You conceded that you wouldn't be here making that argument today if Congress had explicitly said in the statute that nobody is supposed to disclose information with respect to the existence of air marshals. You conceded that that would be something that you wouldn't be able to argue about, right? Well, if we were operating under a different law, I may well not be here, Your Honor, but this is the law that we have, and Congress was very clear that we have to have bright-line guidance to employees or there will be a chilling effect when they're uncertain and they don't know, which undermines the whole purpose of the Whistleblower Protection Act, which is to see that information is placed on the public record when it can make a difference for the security of our nation or other issues such as public health and safety threats. We take that risk. Congress made that judgment call unanimously that there will be some loss of flexibility for government managers because we have to have a fail-safe so that front-line employees who have reasonable information or concerns can warn when there have been mistakes, and so they can make timely warnings before it's too late for anything except the consequences. That was what Mr. McClain was doing here, and while he may or may not have been right at the time, in hindsight his judgment was well taken, and it made an effective difference for our nation. The members of Congress thanked the then-Anonymous Air Marshals for their contribution after DHS conceded its mistake. DHS fired him. Okay, why don't we hear from the government now. You've used some of your rebuttal time, but we'll restore you three minutes. Thank you. Mr. Goodman. Thank you, Your Honors, and may it please the Court. If Mr. McClain were correct, then when Congress spoke shortly after 9-11 and issued two statutes simultaneously giving the head of TSA authority to specifically prohibit the release of specific information, then that's dead-letter law because, according to his argument, it doesn't matter that Congress, after 9-11, created the TSA and said to the Administrator of TSA and the Undersecretary of Transportation Security, who's the same person, so that's why there's this confusion of Section 114 and 4119. In fact, in both, Congress gave this individual the authority and the mandate to issue regulations saying what kind of information can't be disclosed. Again, if Mr. McClain's right, that didn't mean anything. I'm confused. This is a largely FOIA-driven statute. In fact, when you look at the legislative history, when you look at the D.C. Circuit and other cases that have interpreted it, when you look at the first sentence of 4119B, which is the provision that you're referring to, ATSA, notwithstanding Section 552, guess what? That's FOIA. This is a FOIA statute for you to say that for us to conclude, as Mr. McClain argues, eviscerates the statute, undermines its purpose, actually makes no sense. The purpose of the statute is FOIA. This is all about the statute and the legislative history and the case itself. This statute is all about when people want to gain access to whether they're on the terrorist watch list or who is on the terrorist watch list or other such information, that is the kind of information detrimental to public safety, and the statute was written to allow agencies to refuse to release, in response to FOIA requests, this information. Is anything about Mr. McClain's argument going to prevent the government and the administrator from continuing to give life, meaning, and effect to the statute in that context? And while you're answering that, I was going to ask, are you conceding? Are you saying if we roll against you, the government is conceding that the rest of the law, Ray, FOIA has no validity? I'm sorry, the FOIA has no validity? Yeah, the way it's written to deal with secret information and freedom of information no longer has any validity. You said it's a dead letter. Right. No, Your Honor, with respect to FOIA. No, I don't understand that answer. Okay. 4119 is an old statute. It's been there for a long time. The administrator of FAA under 4119, because of the FOIA concerns, exactly what Your Honor was describing, that was in place, and it said much what it says now. After 9-11, Congress created TSA, shifted this authority to TSA, and also passed 114, which gave the administrator of TSA authority to prevent disclosure of information. That's no longer about FOIA. Sure it is, because guess what? The notwithstanding 552 of Title V language was repeated, and that's a reference to FOIA. So the new legislation has the exact same language as the old legislation. It was not changed in that relevant respect. In 114, Your Honor, the same authority, in 4119 and 114, Congress extended this, said it's not just FAA, it's not just FOIA. Did you possibly gigantically overstate your position when you said that if we adopt Mr. McClain's suggestion, we have rendered dead this statute? Or do you now acknowledge and admit that its intended purpose will still absolutely be able to be effectuated, its originally intended purpose, i.e., preventing people through FOIA from gaining access to this kind of information? The originally intended purpose prior to Congress' use of this in ATSA, yes, the FOIA is still there. Wait, are you saying ATSA now doesn't include that use? That ATSA does not allow agencies to prevent FOIA requests, gaining access to that information? ATSA does allow that. Okay, so wait, so there's this huge part of this exact provision that continues to exist in the law and will not at all be affected by Mr. McClain's argument. Only the sliver that directly relates to employees being sanctioned or adverse actions against employees who disclose information will be affected, right? So the law is not dead. The exact section you're referring to still has huge application. The exact section has application to FOIA, yes. The only way it doesn't is whatever application it's meant to have vis-à-vis employees. The new application that Congress intended in ATSA after 9-11 when they expanded this... You said the new application they intended. They still intended the old one, though. They still intended the old one. That's still in place. They didn't take that away. The new application still has huge application. It is not dead law. Okay, but they added in ATSA, they added very importantly, they created TSA and they didn't just leave 4119 for FAA, which still could have continued to do all that it did. But they added TSA's authority and they said, TSA, we want you to pass regulation. And TSA acted under that authority and passed those regulations in 2002. That's what would be eviscerated. While we're dealing with congressional intent, I want you to discuss both the supplemental authority that was submitted last week dealing with a statement by Congressman Todd Platt about prohibited by law and the alleged history both at the time and in all the times that Congress has come back and said, hey, we don't like what the CAFC did. When we say prohibited by law, we mean statutes. A couple of things, Your Honor. The most thorough analysis of the legislative history underlying the original passage of the WPA is found in the full board's first decision in this case. And the full board went through and explained that it's not crystal clear what that language specifically was saying, that in Kent they had already held that what Congress was trying to do is say it's not agency rules and regulations, but then they figured out that it looked like what Congress was saying was it's not certain kinds of rules and regulations, but it doesn't foreclose all rules and regulations. That's what the board explained, and we think that's correct. Of course, we start with the language of the statute, which says specifically prohibited by law. And as the Supreme Court has said, law is assumed to imply regulations as well. But we don't have to get there here. I thought I understood your brief as conceding that when this particular portion of the WPA says not specifically provided by law, I thought I understood your brief to concede that that can't be a rule or regulation, it means statute. Am I wrong? You're not wrong, Your Honor. I'll be as clear as I can. Specifically prohibited by law here means statute, but it doesn't mean that the statute can't direct the agency to pass regulations. So we think specifically prohibited by means that the statute is specifically saying you can't disclose something. It's nondisclosure statutes is what this is getting at. How do you deal with this quote from Congressman Flatt? Let me read it to you. It's therefore important to once again make it clear prohibited by law has long been understood to mean statutory law and court interpretations of those statutes, not to agency rules and regulations. That's an extensive remark, September 28, 2012. Yes, and that's important because Congress amended the WPA a month or so ago and didn't change this language. They already had in front of them the McLean case. They already had this position. They didn't change language, and he said, and other people have said, that's because it only means statutes and court interpretations of those statutes. How do we get around that? Lorillard v. Ponce, Supreme Court, 434 U.S. 575. Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change. Here, that's what happened. So Congress is bound. If they clearly say, hey, this is our legislative intent, it doesn't matter a whit because there are authorities out there and they're presumed to mean exactly the opposite of what they say they mean. No, Your Honor. Congress could, of course, have explicitly said what its congressional intent was as to this language when they passed the WEPA. They didn't do that. What we have is a floor statement by a single congressman. Oh, no. Wait, hold on. Just to be clear, what is the precedent that we are presuming that they were aware of when they didn't, according to you, act to change? You said this case, right? Yes. This is not judicial precedent. This came from the MSPB, as far as I know. Correct. The MSPB is not part of the judicial branch. It's the administrative precedent, Your Honor. So how does that, according to the Supreme Court cases, affect Congress? Again, Your Honor, the quote I was reading from the Supreme Court says, Congress is presumed to be aware of an administrative or judicial interpretation. So that's an administrative interpretation. Can I take you back to the statutory language? Yes, Your Honor. Is it the government's position that specifically prohibited by law includes rules and regulations? Generally, no. So what is the dividing line? What is it if you have certain types of rules and regulations but not others? It's only rules and regulations if a statute says that an agency has to pass that rule and regulation. So the specifically prohibited by law is statute, really. It's saying specifically prohibited by a statute that's saying non-disclosure. So here we have 4119 and we have 114, both of which Congress… It doesn't matter disclosure of what… I mean, I guess you need to clarify that for me. Because you're right. I don't think we would be here if Congress had said the secretary or the administrator shall issue regulations prohibiting people from disclosing information with regard to what marshals are on what planes or how many are on them. We wouldn't be here. So I don't think… I don't. We can ask Mr. Devine that. But I don't think Mr. Devine would be challenging something just because regulations duplicated what was in the statute. So you're not talking about that, right? No. Congress doesn't have to, as Your Honor discussed earlier, Congress doesn't have to have that kind of specificity. Congress doesn't have to say exactly what information, what pieces of paper can't be disclosed. Congress has to specifically order the agency to pass regulations, and that was done here. About anything? About something? I mean, I'm just trying to figure out the parameters of what the government's view is. About non-disclosing information, Your Honor. So if Congress says the administrator shall decide what information should be disclosed and not disclosed and issue regulations with regard to what he thinks should be disclosed and not disclosed, you think that's enough to satisfy the specifically prohibited by law provision? No, that's more akin to a general authority to the agency to pass regulations generally. So tell me how we articulate where the line is from. When Congress directs an agency to issue regulations delineating what can't be disclosed. So it doesn't have to be security information. Here it is, and that makes it stronger, but it could be trade secrets regulation. If under Section B of 4119 instead of C, an agency enacted regulations saying this is the specific trade secret stuff that can't be disclosed, that would be the same thing. That's what we're talking about here. Because it's still Congress specifically saying trade secret. Congress specifically saying air safety. What if Congress has a very general, we authorize you to prohibit disclosures that you think have any impact on the environment? That sounds sufficient because what Congress is saying is... Even though there's such a huge swath of discretion there for the agency to decide what does or does not have an impact on the environment? Well, there is discretion, Your Honor, but it's congressionally ordered discretion. Congress is saying, agency, we trust you. You have the expertise. We want you to tell us what is this category of information. How is that specifically prohibited by law? The specific part, Your Honor, is that Congress is specifically talking about disclosure. This isn't Congress just saying, and this doesn't encompass any of the statutes that say TSA shall issue regulations to effectuate the purposes of all of its authority. So there's a lot of history, not just this thing in September of last year. There's a ton of history where they refused, for example, a proposal in 1978. In the original administrative proposal, the limitations included information disclosure, which was prohibited by law, rule, or regulation. That was rejected by both houses. Yes. I think the House replaced that with just the word statute, and the Senate replaced it with just the word law, and then they went into committee, and they came out with law, and this is exactly the question that the board was grappling with, and the board said, what did they mean when they did that? We assume under Supreme Court's Chrysler decision that law encompasses including regulation. Now, as we've been discussing here, we're not saying here that it needs to encompass regulations. We're saying statute. Congress said 119, 114. Congress said specifically prohibited. So we don't have to get to the question. So you're saying because Congress said you shall issue regulations dealing with disclosure, that that's what's enough. So what about a statute that's 1,500 pages long, and Congress concludes by saying, and the Secretary of HHS shall issue rules and regulations implementing the provisions of these titles. That wouldn't be enough. That wouldn't be enough because they're not specifically talking about disclosure. Well, if they listed the names of the titles, shall implement regulations implementing titles 5 through 6, i.e., Title I, this, Title II, this, Title III. So if they gave the names of the titles, that would be enough. We're getting a lot closer there, Your Honor, and ultimately it's going to be a fine line. It's kind of a delegation argument. I mean, are you sort of arguing that Congress, by doing this provision here, they've delegated their authority and so it's sort of under a delegation principle? They certainly have delegated. They've more than just given TSA the discretion to do this. They've ordered TSA to define those types of information. The problem with the other side's argument is that if this is not what it means, then it's unclear why Congress was granting TSA this authority that the FAA already had in 2001. Congress was saying, we want you to specifically say what kind of information you don't allow your agents to disclose, and that's a specific requirement from Congress. Well, I don't think, and Judge Moore started by asking you, you could be right about all of that. The only difference here, this case will decide whether or not there's a narrow exception to that principle carved out not with respect to FOIA prohibitions, not with respect to disclosures of 99.9% made by employees, but only those disclosures that are protected by the Whistleblower Act, which go to the immediate protection of health and safety of passengers. Right? I mean, that's all the practical matter we're talking about, carving whether or not that narrow exception is carved out. The rest of the statute has a lot of force and effect. We wouldn't characterize that as a narrow part of the statute because the alternative is that any TSA agent can disclose anything that the agent believes is a gross violation of the law or represents a problem with safety or public health. We have to reasonably believe it. No, it's not that he comes in and says, gee, I thought this was. The whistleblower statute is quite narrow. So the reality is that we have TSA agents on some flights and not others. There are air marshals on some flights and not others. Any time an air marshal, and it is reasonable to say, I think that flight will be more protected if I'm on it. So he says to somebody, I should be on that flight, not this flight. They're putting me on short flights, not long flights. They're putting me on overseas flights. I should be on domestic flights, whatever the disagreement is. That's all SSI, and it's SSI for a really good reason. If it weren't protected, then the terrorist, of course, would know which flights are protected and which ones are not. Because we can't protect all of them, it's that veil of secrecy that's the essential way the air marshal system works. And any disclosure about details about which air marshals are on which flights and which kinds of flights are not protected, that's all SSI needs to be protected. If Mr. McClain's right, then all of that information is free to the public. Somebody can just, any air marshal can say, if he has a reasonable belief that he's on the wrong flight, he should be on a different flight, then he can present that information to the media and the agency has no way to protect it. Congress was specifically concerned with this when it passed TSA. When they created this agency, they gave TSA the authority to prevent that kind of disclosure. That's what we're saying would be eviscerated. That would be the problem if we don't read the Whistleblower Protection Act as allowing this. And we don't think that when Congress passed the Whistleblower Protection Act that they intended that later Congress, after 9-11, couldn't pass a statute ordering the agency to protect information. But couldn't they, they could still, again I'm just going back to whether even this little sliver would be eviscerated. This still gives the administrator the ability to enact regulations and take adverse actions against employees that reveal information that turns out to be detrimental or is believed to be detrimental to air safety. What if they had no beneficial intent? Like here, the air marshal believed that he was going to help protect America by getting more people on the flight, making sure there weren't flights without air marshals on them. Well, what about the less scrupulous individual who reveals information not with this altruistic intent that no reasonable person could believe has that altruistic intent? Wouldn't the statute still have effect because now the administrator can take adverse action against those people because they're not going to be protected disclosures and they've been specifically delegated the authority by Congress to go ahead and fire those people. So then the question is whether the individual reasonably believed that they were doing something beneficial. No, maybe they don't even reasonably believe it. But the statute gives the administrator the authority to then take the necessary action. It reinforces that you can take some serious adverse actions. Go ahead, enact regulations. We need you to do that to protect these people. This is a serious concern. What the Whistleblower Protection Act says is that the agency can't take that action if they reasonably believe their... No, I know, but I'm going back to whether... Okay, so this is not a WPA disclosure that I'm talking about. You're saying that if we don't read the statute the way you want us to read the statute, that little sliver, i.e., the sliver about delegating authority to the administrator to prohibit disclosure of information is rendered meaningless. And I'm saying, is it really rendered meaningless or doesn't it still have purpose and effect in the cases where the administrator wants to sanction people for disclosing information that isn't WPA information? I think the answer is no, Your Honor, because if you don't agree with us as to the WPA and this exception being applicable, then, again, any employee can disclose the information. They just have to... No, no, no, that's disinformation. That's the whole key. You're saying the statute's rendered meaningless. Look, you're doing a great job with your argument, Mr. Goodman. You are clearly articulating the government's position. Really, and I'm struggling with this case, honestly. I'm very conflicted. And so what I'm trying to figure out, because I've got multiple canons of statutory interpretation racing through my brain that seem to conflict with each other in this case, and the most powerful one that you've articulated is you're going to eviscerate this statute. If I go the way the WPA may indicate I should go, then I've given no force and effect to Congress's other statute here, the ATSA, and namely the delegated authority to the administrator. And so what I'm trying to figure out and struggling with is, is that really true? Doesn't Congress need to delegate to the administrator the authority to prohibit disclosures of all kinds, not ones that are necessarily going to have some positive altruistic purpose? And I guess that's what I'm getting at. Is this delegated authority still meaningful because it reinforces the administrator can enact regulations that allows agencies to take adverse actions against people that disclose anything related to safety, even marginally related? The kind of stuff you wouldn't normally fire somebody for. But here now you can because we've delegated the authority to the agency and they've enacted a reg to allow that. Under 114 or 4119, the agency is ordered to issue regulations saying what can't be disclosed. It has to be detrimental to the security of transportation in the current language. So if I understand Your Honor correctly, you're saying doesn't that still have force even if we read the WPA the way Mr. McLean is arguing? Yes. You now understand my issue. Thank you. The answer is no because every time somebody, I mean the secretary of course could issue those regulations, but those regulations would then have no force whatsoever. So the secretary said here's what we think SSI is. Here's what we think, and forget the term, here's what we think is information that would be detrimental to the security of transportation if it's released. But then the agency can't remove anybody or penalize anybody in any way. Who's a whistleblower? Who discloses that information because they say the reason we did it. Is information ever disclosed by someone who is not a whistleblower? Yes. It is. But in all cases when somebody has disclosed this type of information, they can come back and say I was being a whistleblower. The problem is what Congress wants is this information to not be disclosed. If somebody can disclose this information by whistleblowing, so you're saying he has a good faith belief that this information is going to be helpful, and the individual, the employee comes out and says, I think I'm doing what's in the best interest of America, so I'm going to disclose sensitive security information, then the agency can do nothing. When you say this information, you say Congress doesn't want this information. Well, we don't exactly know what that means, but we do exactly know what Congress means when it says prohibited by law. Do you want to respond briefly? We're well into overtime here. I am well into my rebuttal. You have a rebuttal? You just gave yourself a rebuttal? I'm sorry. Well into my argument. Your Honor, I would just close by saying, almost reiterating, that we think that if you allow this exception to not be applicable to SSI, then the agency has no recourse and individuals can come out and say, I had good intentions and that will be enough to allow them to reveal sensitive information that shouldn't be revealed because it's necessary that we protect it, and Congress mandated that the agency protect it by passing these two statutes, not just one. They wanted to be very clear that this information was protected. Thank you very much. Mr. Devine, don't feel compelled to use it, but in order to keep things even, we went almost ten minutes over with Mr. Goodman, so why don't we give you up to ten minutes if it's necessary for your rebuttal. Thank you, Your Honor. Can I ask you hypothetically, and I think Mr. Goodman was maybe trying to get to this. In the particular circumstance we're talking about, the marshals, how many marshals on plane, let's assume hypothetically, and I don't know this to be a fact, but let's assume the government only has resources to put marshals on 20% of the flight. So it makes a decision as to what those 20% are. So we can assume that with respect to the 80% of the flights that have no marshals, somebody might say that they'll blow the whistle and say, there are no marshals on every one of these 80%, and we're covered. I'm a whistleblower because there's a specific danger to passengers per se because there's no marshal on this flight. So that this particular circumstance gives everyone who thinks there ought to be a marshal on every single flight the opportunity to disclose the absence of a marshal on 80% of the flight. Is he right about the practical impact of not allowing this regulation to suffice under the whistleblower act? He's not right under this statute, Your Honor. There's no protection written in the statute because of good intentions. You have to have a reasonable belief, which this court has defined very specifically. Any marshal who thinks, let's assume some marshal, I think everybody would agree, are passengers better served if there's a marshal? Probably people would say yes. So if it's disclosure, every time someone discloses that there's not going to be a marshal on a particular flight, is that protected information under the whistleblower act because it's intended to secure public whatever the language is? Your Honor, it's not my place, and in my opinion, it would not be protected activity. That would be an ego belief, not a reasonable belief. It may be good faith that the marshal thinks she is indispensable, but that's not that person's call. That's not the scenario that we have here. Here we have all coverage of flights that have been confirmed to be the targets of a terrorist attack were going to be unprotected with air marshals. There's a big difference between a haystack and a needle. If the court feels that that's the key issue here, the case should be remanded back to the board to determine whether Mr. McClain had a reasonable belief for his concerns or he was just acting out of unreasonable personal concern. But the concern is that they would operate with a broad sweep because they would say that you have a reasonable belief there's a danger to the public safety, there's a greater danger to the public safety if there are no marshals on the plane than if there are marshals on the plane. And you're telling me I shouldn't worry about that, that that's not broad enough to be a danger to me. Just the absence of a marshal on a plane is not sufficient to establish a whistleblower's specific danger. I wouldn't presume to make that determination. It would be made in case-by-cases by the Merit Systems Protection Board based on the reasonableness of the belief. But first, the Whistleblower Protection Act has to be available to the employee to determine whether they responsibly or irresponsibly exercise their rights under that statute. The board has locked the door on employees from making any disclosures if the information is sensitive security information, reasonable or not reasonable, helping the country or hurting the country. And as Executive Order 13556 pointed out, the mere fact that information is designated as controlled unclassified information, which SSI is, shall not have a bearing on determinations pursuant to any law requiring the disclosure of information or permitting disclosure as a matter of discretion. We need to get to, if this is a valid concern for the court, we need to get to the reasonableness of Mr. McLean's beliefs. But he had the right to make that judgment call as a front-line federal worker charged with defending our nation. He believed and testified repeatedly, over and over, without any contradiction or qualifier. He was performing his mandatory duty to defend the country. When something horrible had gone wrong, no one could explain it. And so he was going to get a warning out to find out if we could do something about it. If he was mistaken on his reasonableness, then he'd be entitled to protection under the Whistleblower Protection Act. But if he was right, then the law shouldn't bar his opportunity to warn the country, merely because some years after he made the disclosure... He was right about what? Right that this did present a specific danger to safety? I'm sorry? Right about what? That he was right that there was a threat to public health and safety from not having air marshals on any of the flights targeted by terrorists. We believe that he was reasonable. The members of Congress and the oversight committees thought it was reasonable. They thanked him. The DHS thought it was a reasonable concern. They said, we made a mistake. And within 24 hours, they reversed it. We think the record demonstrates that there is a reasonable belief, that that examination is not necessary. But if the court disagrees, then there should be fact-finding on whether his subjective judgment was protected by the act or not protected by the act. He should at least have access to be judged on his disclosure. I should also follow through on my commitment to Your Honor. The discussions with Mr. McLean's supervisor, Mr. Schofield, are discussed on pages 201, 207, 210-13, and 283 and 284 of the attendance. Counsel, if you don't mind me switching gears, to me the most difficult issue in this case, and I think the government has done a very good job of crystallizing it in this argument, is whether or not specifically prohibited by law, everyone agrees that means statute. And your run-of-the-mill regs and rules, not on the table. The government has made that clear. What they say is, but statute in this case is specific, in that it's talking about prohibiting disclosure of particular kinds of information. Why aren't they right about that? What's wrong with that argument? The legislative history would indicate that undermine is not the same type of bright-line guidance. The Aviation Transportation Security Act says that the assistant secretary can bar the disclosure of any information that he believes could undermine aviation security. We don't believe that undermine is a sufficiently tangible criteria to give an employee fair notice. As the board stated in a report preceding their ruling, employees won't know whether they're free to make public disclosures without asking for permission in advance to learn its status. As Judge Probst, I think, was just saying, it doesn't say the administrator can enact regulations that do that. That would be discretionary. It says, shall. The administrator shall prescribe regulations prohibiting disclosure of information detrimental to the safety of passengers in air transportation. That is so specific and concrete. Why isn't the statute specific enough? The statute requires a judgment on what is detrimental. The SSI regulations made an attempt to get specific on that. Congress was very clear that specific requires either the absence of discretion or particular criteria. I think that's what the government disagrees with you on. It doesn't require the absence of discretion on everything. It requires the absence of discretion vis-à-vis prohibiting information. As I understand Mr. Goodman's argument, this statute is not discretionary about you can choose to effectuate safety in any manner you see fit. This is a specific statute. It says you shall prescribe regulations prohibiting disclosure of information. About that, there is no discretion. I assume he would agree with you. He's not going to be able to tell us. Yes, there is some discretion on determining what is or is not going to violate passenger safety, but there is no discretion regarding the fact that the administrator is supposed to prohibit disclosure of some information. And that's what he says is what Congress meant by the no discretion. That's a mandatory duty, Your Honor, on the administrator. The Whistleblower Protection Act looks to specific guidance for employees on what their options are. We would contend that the word detrimental is not sufficiently specific guidance so that an employee knows whether they're operating legally or illegally. So, I mean, you know, what we have to do here, our whole job is to parse these words. I mean, that's what interpretation is. So when I look at the Senate report that, by the way, in case anybody's here from the Green Brief, this is very helpful. Thank you for submitting the amicus briefs to the Court. When I look at the Senate report, and in particular what's cited on page 12 of the Senate report, it says, and it's talking about the whistleblower protection, and this is what, you know, is cited as very supportive of your position, those disclosures which are specifically exempted from disclosure by a statute, which requires that matters be withheld from the public in such a manner as to leave no discretion on the issue. Now, the question there is when the Senate says that, do they mean to leave no discretion on the particular matters, or do they mean to leave no discretion on the fact that material is supposed to be withheld from the public? That's the problem. That report isn't crystal clear to me on whether he's right if the discretion goes to whether or not you're withholding versus the type of thing you're withholding. If you're right on what discretion goes to you, and if he's right, he wins. So that's what I'm struggling with. Your Honor, I don't know if it's realistic for any given passage in any specific report to be entirely comprehensive on disposing of an issue. But consistent with our interpretation of that report, every legislative history reference is interpreting the word specific in terms of its responsibilities for the employee. And the purpose of it was so that there wouldn't be a chilling effect and they wouldn't have to ask advance permission, whether it's lawful or unlawful, to disclose a particular type of information. There simply isn't any reference to support Mr. Goodman's theory. While it may be reasonable intellectually, that's not the law that Congress passed. And I don't believe it is reasonable intellectually. The Ninth Circuit said there could be a good faith mistake because the regulations were confusing. That was the conclusion of Congress. That's why the President issued an executive order. And it wasn't because this information is dangerous to national security. It was so that we could have the responsible management of unclassified information by national security agencies, including FOIA decisions. And the FOIA decisions are very relevant to the administrator's discretion. But when it comes to an employee's free speech rights, there has to be some tangible, bright-line guidance. Otherwise, we have a system of prior restraint where they have to ask first. Well, we thank both sides for their argument, which was very helpful to us. And the case is submitted.